IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TOMMY ROBINSON, Pro Se

    Plaintiff,

v.

TALBERT HOUSE, et al.,

    Defendants.

Case No. C-1-02-441
Judge Beckwith
Magistrate Judge Hogan

FILED
JUN 27 2003
KENNETH J. MURPHY, Clerk
CINCINNATI, OHIO

## PLAINTIFF"S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In accordance with the court's order to show cause, Plaintiff submit the following Memorandum and attachments to establish credible premise to Plaintiff's allegation of Civil Violation, 29 U.S.C. 623(a), by Defendants in respect to ADEA of 1967. The pre-textual circumstances of Defendants' actions which prompted Plaintiff to seek a just resolution can only be totally uncovered within a court forum that will initiate full disclosure of the true facts so equal and impartial justice can be administered.

Respectfully submitted,

*Tommy Robinson*
Tommy Robinson (Plaintiff)
2648 Harrison Avenue #14
Cincinnati, Ohio 45211
Phone: (513) 662-1488

Exhibit D

## **SUPPORTING MEMORANDUM**

The official date of me being hired by the Talbert House Organization was February 26, 2001. My job location was at the Beekman Street facility, working in the capacity as an Activity Security Monitor. The population consisted primarily of convicted inmates that had been sent to that facility to complete the final months of their incarceration in an environment that provided them with some therapeutic option before their final release. During the entirety of my employment I had worked beyond the required expectations of my position's criteria such as; working a two person shift alone, also being left in the position of having to personally train new employees who came to work at the facility and had not been trained nor instructed before their being assigned to shift duty.

For the duration of the time of my employment, other than a isolated accusation of my falling asleep at a training session that I had volunteered to attend, which by the way, was not even located at the Beekman Street facility where I worked, there had never been any questioning, warnings, reprimands, nor complaints concerning any job performance problems so that an appropriate period of ratification could be initiated. Nevertheless, two (2) days prior to the end of my six (6) month probationary requirement, Doris Tribble, the facility manager, realizing that I was not scheduled to return back to work until after those two (2) days had elapsed directed me to report to the facility on my scheduled day off, which was August 24, 2001. Upon my arrival Doris Tribble gave me an unsigned Notice of Termination paper that listed some contrived insinuations that was suppose to be the basis of the termination action against me. The dates which most of the written insinuations suppose to have occurred coincidentally all happened around the last week of my probationary period, as well as the week

during which time Doris Tribble had previously met with Glenn Davis, the younger employee, who at that time was suspended from work duty at the facility because of a serious fraternization complaint against him by one of the clients. This same employee was the individual who was immediately returned back to active duty at the facility to replace the position of Activity Security Monitor that became available after my removal. The sequence of the fore mentioned occurrences and further stated background support indicate that the circumstance of my termination was based on a pre-textual intent to mask the true nature of the action of discrimination against a member of a protected class. REFERENCED CASES/LEGITIMACY IN SUPPORT OF THIS PENDING MATTER IS AS FOLLOWS:

    Id. Wexler v. White's Fine Furniture, 317 F3d 564 (6th Cir. 2003).

    Charles A. Kline v. Tennessee Valley, 128 F. 3d 337, 338, 348 (6th Cir. 1997)

    Lucy E. Carter v. AT & T Communications, S.D.N.Y. 1991, 759 F. Supp. 155

    (ADEA OF 1967 2 et seq., 29 U.S.C.A. 621 et seq.)

    (Civil Rights Act 1964, 701 et seq. 42 U.S.C.A., 2000e-2 –et seq.) -205. Pretext,

    -203. Disparate treatment, -226. Probationary period.

    Fed. R. Civ. P.56(d)(e)(f)

**STANDARD of REVIEW**

In expounding statures, court must look to provisions of the whole law. Employer <u>did not take prompt and effective action</u> after employee complaint was received, as a condition to remove them from the perimeter of liability. --- See Act of 1964, 703(a) as amended, 42 U.S.C.A. 2000e-2(a)--- "Employer" is defined to mean "a person engaged in an industry

affecting commerce who has fifteen or more employees ... and any agent of such person." 42 U.S.C. 2000e(b).

## BACKGROUND TO SUPPORT CIRCUMSTANTIALITY

The notice of termination stated that since my employment on 2/26/2001 I had performance problems and lacked the understanding of my job duties as an Activity Security Monitor. It lists first the dates of 6/25/2001 and 6/26/2001 as one of the performance problem examples, which involved my attendance at a Corrective Thinking Training. The accompanying copy of my Certificate of Attendance and for successfully completing this training that I received from the training manager clearly establish that a contradiction exist concerning my conduct at that event. There were no other performance problems stated <u>until</u> the week prior to my being terminated, after which Glenn Davis, a much younger employee who had been on <u>suspension</u> for a serious offense involving a client at the Beekman Street facility, was returned to active work duty at this same facility. As the ending of my six months probationary period approached, the manufacturing of the disputable accusations to justify my termination and reinstalling Glenn Davis into the position of Activity Security Monitor, which I had occupied, was initiated.

On 8/22/2001 it was assumed that I left a Breathalyzer machine unattended, and although all staff on duty had access to this machine, I was targeted and deemed irresponsible in regards to that property. It also appear that on that same day my supervisor, according to the termination notice, suppose to have observed me taking food from the facility, but according to Doris Tribble just my presence intimidated him enough to prevent him from mentioning anything to me at the

4

time of the alleged incident, nor afterwards. The Defendants' deposition contains my denial of that incident, although Scott Mcvey states in his Affidavit that <u>food and snacks were provided for clientele and its employees</u>. The supervisor's accusation defames my character by giving the impression that I stole something with malicious intent, which taken on face value, would be the primary accusation that would validate Talbert House's only concrete reason to terminate my employment.

The specifics of the protocol that was suppose to have not been followed on 8/16/2001 and 8/22/2001 stand without facts supplied that would allow the accusations to be challenged. Also, the accusation that I left the facility unauthorized on 8/21/2001, which I deny, further added to the manufactured allegations that was presented to me for the first time at that meeting to terminate my employment on 8/24/2001. It was implied by Doris Tribble that she was exempt from answering any questions or providing any explanations regarding the accusations. However she did state that I intimidated my younger supervisor when I asked her why he didn't say something to me immediately if he saw me violating a company policy. Doris Tribble also made reference to my age being an intimidation to another employee whom had worked at the Beekman Street facility.

## **CONCLUSION**

In opposition of Defendants' motion for Summary Judgment I submit that by their manufacturing offenses based on unsubstantiated fact, as a pretext to replace my job position with a younger individual not of a protected class, my Civil Rights according to ADEA 1967, was violated as a matter of law. The pattern of their accusations would have the court to believe that after almost six (6) months on the job and having an impeccable record of no performance

5

infractions concerning my work ethics, I would, in the last week prior to the end of my probationary period change into the incompetent employee that I was accused of being. The personal friendship that existed between the manager Doris Tribble, and Glenn Davis employee, would definitely put into question the motivating factors that inspired the initiation of my termination from that facility.

### Elements of Prima Facie Title V11

1. Plaintiff belongs to protected class    2. Plaintiff was qualified for the job

3. Plaintiff was satisfying employer's normal requirements

4. Plaintiff was terminated and replaced by worker not in protected class

Because of the questionable circumstances and motivating factors involved in this case that would more thoroughly be addressed in an appropriate trial forum, I ask the court to deny Defendants' Motion for Summary Judgment. With my signature I attest to have been truthful concerning all of the information set forth herein regarding this case.

Respectfully submitted,

*Tommy Robinson*
Tommy Robinson (Plaintiff)
2648 Harrison Avenue # 14
Cincinnati, Ohio 45211
Phone: (513) 6621488

6

## CERTIFICATION OF SERVICE

I hereby certify that a true and complete copy of the foregoing Plaintiff's opposition to Defendants' Motion for Summary Judgment was served personally by Plaintiff, this 27th day of June, 2003 upon the following:

>Adele E. O'Conner
>Porter, Wright, Morris & Arthur LLP
>250 East Fifth Street, Suite 2200
>Cincinnati, Ohio 45202

>Attorney for Defendants

>_Tommy Robinson_
>Tommy Robinson